**NOT FOR CITATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| AMJAD ABUDIAD,<br><br>    Plaintiff,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>    Defendants._____/ | No. CV 09-1778 JSW (NJV)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO QUASH DEPOSITION NOTICES**<br><br>(Docket No. 94) |

    The district court referred all discovery matters to this Court for determination on September 12, 2011, including Defendants' motion to quash two deposition notices Plaintiff issued in February 2011. Doc. No. 147 (order of referral); Doc. Nos. 94, 96 (motion to quash and response). In light of the time that had elapsed since the parties first addressed the discovery issues, and in light of Judge Patel's order granting in part Defendants' motion for summary judgment, this Court ordered further briefing on the discovery disputes. *See* Doc. Nos. 158, 161, 162. The Court heard oral argument on the motion to quash on October 19, 2011. The Court asked the parties to seek clarification from the district court regarding the bifurcation order. Doc. Nos. 165 & 166. On November 9, 2011, the district court provided that clarification. Doc. No. 168. Having carefully considered the arguments of the parties and the papers submitted, and for the reasons provided below, the Court **grants in part and denies in part** the motion to quash.

**BACKGROUND**

The factual background of this dispute has been fully described by Judge Patel. *See* Doc. No. 135.  In summary, plaintiff Amjad Abudiab ("Abudiab" or "Plaintiff") alleges that defendant Elias Georgopoulos ("Georgopoulos"), a parking control officer employed by defendant City and County of San Francisco (the "City"), punched and pepper-sprayed him, thereby violating his constitutional rights under the First, Fourth and Fourteenth Amendments of the United States Constitution.  Abudiab also alleges that the City is liable for Georgopoulos' actions under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  Finally, Abudiab alleges that defendant Antonio Parra ("Parra"), the former head of the Enforcement Division of the Department of Public Transit ("DPT") (which employs Georgopoulos) is both directly liable for the constitutional violations as a result of his actions or failures to act, and liable in his official capacity.  Parra is now the Commanding Officer of the SFPD's Special Victims Division.  Doc. No. 161 at 1.

Judge Patel *sua sponte* bifurcated discovery on Plaintiff's *Monell* claims against the City on August 9, 2010 (Doc. No. 56), before Plaintiff named Parra as a defendant in the case (Doc. No. 57). Judge White recently denied Abudiab's request to reconsider the bifurcation order.  Doc. No. 157. Plaintiff served deposition notices on the City and on Parra, which Defendants moved to quash on the ground the depositions were premature in light of the bifurcation order.

Because neither Judge Patel nor Judge White had addressed whether discovery should be bifurcated as to the claims Plaintiff asserts against Parra in his individual capacity, this Court asked the parties to seek clarification regarding the bifurcation order.  Judge White clarified that the bifurcation order applied only to the *Monell* claims, and that "claims against Captain Parra shall be heard with the claims against the other individual defendant in the first phase." Doc. No. 168.

**DISCUSSION**

**A.   Arguments of the parties**

Plaintiff seeks to depose the City and Parra now on the ground that the depositions are not related to the bifurcated *Monell* claims.  He argues a person most knowledgeable deposition for the City under Federal Rule of Civil Procedure 30(b)(6) is appropriate on three grounds.  First, he contends the City's failure to discipline Georgopoulos may have led Georgopoulos to believe he

2

1 could harm others with impunity and "where a government official uses his government authority to
2 commit a wrongful act and get away with it, it may be a factor used to determine whether there was
3 color of law." Doc. No. 162 at 2. Second, he seeks to depose the City regarding prior acts by
4 Georgopoulos, which could be admissible in this case under Federal Rule of Civil Procedure 404(b).
5 *Id.* Third, he contends he offered to forego the deposition if the City stipulated to the authentication
6 of certain documents, an offer the City refused. As to Parra, Plaintiff contends that Parra's failure to
7 react to prior complaints about Georgopoulos allowed a dangerous and violent Georgopoulos to
8 patrol the streets of San Francisco in uniform and armed with pepper-spray, which lead to the
9 deprivation of Plaintiff's rights. *Id.* at 3. Plaintiff contends that this is relevant to Plaintiff's claim
10 against Parra in his individual capacity, and not to his claim against Parra in his official capacity.

11 Defendants contend both depositions are premature. They argue that the discovery Plaintiff
12 seeks to support his vicarious liability claim against the City and Parra is identical to the *Monell*
13 discovery that has been bifurcated. Judge Patel reasoned that if Georgopoulos did not violate
14 Plaintiff's right, then *Monell* discovery would be unnecessary. *See* Doc. No. 100 at 11:7-12:19.
15 Defendants contend the bifurcation order therefore should apply to all of Plaintiff's vicarious
16 liability claims, regardless of the label or the defendant involved. Judge White, however, has
17 clarified that the claims against Parra will proceed in the first phase of the trial. Doc. No. 168. In
18 addition, Defendants contend that Parra should not be deposed because he is a high ranking
19 government official. Defendants did not anticipate Plaintiff's argument that "prior acts" could be
20 admissible under Rule 404(b).

21 Both parties acknowledge that Plaintiff offered to withdraw the deposition notice addressed
22 to the City if the City stipulated to the authenticity of certain documents. Doc. No. 161 at 3 n.2;
23 Doc. No. 162 at 2. The parties disagree as to which of them decided not to proceed in this manner.

24 **B. Analysis**

25     1. Deposition of the City

26 A 30(b)(6) deposition of the City is not relevant to establishing whether Georgopoulos acted
27 "under color of law." Plaintiff contends that Parra's failure to discipline Georgopoulos may have
28 led Georgopoulos to believe he could act with impunity due to his official position, and from there

3

Plaintiff reasons that the deposition testimony might be relevant to his color of law claim. Plaintiff's analysis is unsupported by any authority suggesting prior acts, even if similar, can be used to establish color of law. In order to establish that Georgopoulos operated "under color of law," Plaintiff must establish that Georgopouloss "exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Abudiab v. City and County of San Francisco*, 2010 U.S. Dist. LEXIS 57785, *7 (N.D. Cal. April 12, 2010) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). Generally, a public employee acting in his official capacity will be acting "under color of state law," even if he abuses the position given to him by the state. *Id*. (citing *West v. Atkins*, 487 U.S. 42, 49-50 (1988)). Although there is "no rigid formula for determining color of law for purposes of determining section 1983 liability, . . . a court must examine the totality of the circumstances." *Id*. Here, relevant details include whether Georgopoulos wore his uniform when he interacted with Plaintiff, whether he purported to order Plaintiff or others at the scene to act or refrain from acting based on his status as a city official, and what Georgopoulos said to Plaintiff regarding his status as a city official. *See id*., at **11-12. Also relevant is whether Georgopoulos' wrongdoing was linked to the events that arose during the conduct of his official duties. *Id*. at *16 (where animosity of accused off duty police officer towards victim grew as result of the performance of the officer's official duties, the trier of fact can find that the officer acted under color of state law although he was off duty at time of the incident and shooting victim was not related to the performance of his duties). Georgopoulos' use of City-issued uniforms and pepper-spray could be relevant, but is not dispositive. *Id*. at *19. The Court must examine all the circumstances surrounding Georgopoulos' interaction(s) with Plaintiff -- not the circumstances surrounding the City's reaction to Georgopoulos' interactions with other persons on different occasions. Defendants' motion to quash the 30(b)(6) deposition of the City on this ground is granted.

      A 30(b)(6) deposition of the City regarding "the details of some of the prior acts of violence that Plaintiff believes Georgopoulos may have committed while on duty" (Doc. No. 162 at 2) is also premature. First, Plaintiff's notice of deposition goes far beyond this relatively narrow topic. *See* Doc. No. 94, Ex. A at 2 (seeking testimony regarding training of officers and discipline of

4

Georgopoulos).  Second, the "other complaints" topics squarely fall in the *Monell* discovery the district court bifurcated.  Should the jury conclude Plaintiff's rights were violated, the City will be deposed in connection with Plaintiff's *Monell* claims.  Judge Patel found "no point in going through a lot of *Monell* discovery" until defendant was found to have violated Plaintiff's right.  Doc. No. 100 at 11:16-18.  In light of the District Court's stated interest in bifurcating *Monell* discovery, and in light of the fact that Plaintiff already has obtained document discovery on other complaints involving Georgopoulos, a deposition at this stage is inappropriate.

However, if the City will not stipulate to the authenticity of documents it produced, the Court will order a limited deposition of a 30(b)(6) deponent for that purpose alone.

2.  Deposition of Parra

Plaintiff alleges that Parra directly violated his rights by failing to act to prevent Georgopoulos from harming Plaintiff.  *See* Doc. No. 162 at 1, 3; *see also Larez v. City of Los Angeles*, 946 F.2d 630, 645-46 (9th Cir. 1991).  A supervisor's liability under this theory is premised on his participation in the deprivation of a plaintiff's civil rights.  *Larez*, 946 F.2d at 646.  Defendants therefore argue that the discovery Plaintiff seeks relating to his "direct liability" claim against Parra is identical to the discovery he will seek relating to the *Monell* and supervisory liability claims in Phase II.  However, Judge White has clarified that the claims against Parra will be heard in Phase I.  Doc. No. 168.  Plaintiff accordingly is entitled to depose Parra at this point.

Parra's position in the SFPD does not preclude him from being deposed.  Indeed, Plaintiff points out that if a police chief can be deposed, so can Parra.  Defendants argue that Parra was not a direct supervisor of Georgopoulos and has no personal knowledge about this case (Doc. No. 161 at 1), but Plaintiff suggests he has evidence that at least some complaints regarding Georgopoulos were addressed to Parra (Doc. No. 162 at 2).  That Plaintiff seeks to depose Parra regarding his personal knowledge of other complaints involving Georgopoulos distinguishes the authorities cited by Defendants.  *See* Doc. No. 161 at 2.  Plaintiff accordingly may depose Parra regarding his personal knowledge of facts relevant to this case; Plaintiff may not depose Parra as a 30(b)(6) witness for the City.

5

**CONCLUSION**

For the reasons stated above, and for good cause shown, the Court grants Defendants' motion to quash the notice of deposition to the City and denies Defendants' motion to quash the notice of deposition to Parra. If the City will not stipulate to the authenticity of documents produced, the Court orders the City to provide a 30(b)(6) deponent on this topic within the next 10 days.

**IT IS SO ORDERED.**

Dated: November 14, 2011

NANDOR J. VADAS
United States Magistrate Judge